WILDERMUTH, APPELLANT, *v.* LIGGETT ET AL., ADMRS., ET AL., APPELLEES.

(No. 3748—Decided November 20, 1944.)

*Mr. Robert J. Beatty* and *Messrs. Knepper, White & Dempsey,* for appellant.

*Mr. Willis H. Liggett* and *Mr. E. Searles Morton,* for appellees.

GEIGER, J. The matter is presented to this court on an appeal from the judgment of the court below sustaining a demurrer to the third amended petition. The plaintiff not desiring to plead further, the petition was dismissed at the costs of the plaintiff.

The court considered the motion to strike as a demurrer. While the ultimate question to be determined by this court is rather simple, yet, in order that it may be understood, it is necessary to set out at some length the allegations of the petition.

Plaintiff recites the fact that he is the surviving spouse and sole heir at law of Emma W. Wildermuth, deceased, who, on the first day of November 1925, as lessor, entered into a 99-year lease, with Henry C. Hanna as lessee, covering certain real estate in Franklin county. One-half interest in such lease was later assigned by the lessee, Henry C. Hanna, to the defendants, Gilbert H. Carmack and Warren A. Armstrong, and the other half interest was transferred from the estate of Henry C. Hanna to Laura E. J. Hanna.

The written agreement recites as part of the consideration for the 99-year lease that the lessee assumes

and agrees to pay as same became due a certain mortgage of $30,000 held by the Prudential Life Insurance Company, which mortgage had been reduced to the sum of $14,000. The lessee desiring to extend the time for the payment of $14,000 Emma W. Wildermuth, party of the first part, and Laura E. J. Hanna and the other parties of the second part, agreed that if Emma W. Wildermuth should execute and deliver a new mortgage on the premises with the life insurance company, the proceeds of which were to be used to pay the balance of $14,000, the defendants Laura E. J. Hanna and the other parties of the second part would assume and agree jointly and severally to pay the above-mentioned mortgage of $14,000 to the insurance company as the same became due and payable, and that all stipulation should apply to and be binding upon the parties, the same as in the original 99-year lease.

Laura E. J. Hanna died in 1930 and Ellis O. Jones was appointed and qualified as one of the executors of her estate. When the first instalment note of $750, together with the semi-annual interest, became due to the insurance company, the executors of the estate of Laura E. J. Hanna failed to pay the sum due according to the terms contained in the contract.

In November 1930, Emma W. Wildermuth, now deceased, and the plaintiff, in order to prevent foreclosure of the mortgage, were obliged to pay and did pay certain sums to the insurance company including the principal sum then due and the interest on the deferred payments. Demand in writing for and on behalf of Emma W. Wildermuth was presented to the executors of the estate of Laura E. J. Hanna as to the sum then having been paid to the insurance company, together with interest, and on the 2nd day of February, 1931, such executors disallowed the claim, and Carmack & Armstrong refused to pay any money on account of

any payment made to the insurance company.

During 1931 Ellis O. Jones resigned and C. R. Swickard was appointed as co-administrator of the estate of Laura E. J. Hanna. Previous to the resignation of Jones there was pending in the court a suit brought by Emma W. Wildermuth against Ellis O. Jones and Ellis O. Jones, Jr., as administrators of the estate of Laura E. J. Hanna and against Carmack & Armstrong. That suit presented only one issue, that of the legality of the contracts and agreements between the parties, Emma W. Wildermuth and the two Joneses as administrators of the estate of Laura E. J. Hanna and Carmack & Armstrong. Ellis O. Jones, Jr., and C. R. Swickard continued as the duly appointed and qualified administrators of the estate of Laura E. J. Hanna until the death of Swickard when Robert G. Morton, with Willis H. Liggett, his attorney, was appointed as co-administrator, with Ellis O. Jones, Jr. Morton resigned in 1943, and Liggett was appointed and qualified as co-administrator of the estate of Laura E. J. Hanna.

In 1943 Ellis O. Jones, Jr., resigned and Morton was appointed as co-administrator and Morton and Liggett were duly appointed co-administrators of the estate of Laura E. J. Hanna and, as such, are defendants in this action with Carmack & Armstrong, co-signers with Laura E. J. Hanna as parties of the second part of the agreement with Emma W. Wildermuth.

It is further averred that the co-administrators, Jones, Jr., and Swickard, and Carmack & Armstrong, each failed to pay to the insurance company the interest and the instalments due, and the plaintiff and Emma W. Wildermuth were compelled to pay the company the additional sum then due, to prevent the insurance company from foreclosing; that on or about May 1, 1932, the plaintiff caused to be presented to the co-administrators, Swickard and Jones, Jr., a claim that

they cause to be repaid to Emma W. Wildermuth a sum that she and the plaintiff were required to pay to the insurance company to prevent it from foreclosing its mortgage because of the refusal to pay of the administrators and Carmack & Armstrong, as parties of the second part in the contract of 1929. It is asserted that this contract was admitted to be a legal and valid contract and the claim of Emma W. Wildermuth was allowed as a valid, subsisting and continuing mortgage claim as long as the party of the first part, Emma W. Wildermuth, or her heirs were required to make any payments on principal and interest to the insurance company.

It is asserted that on May 10, 1932, the co-administrators paid certain sums to Emma W. Wildermuth, such payments not being sufficient to pay the past due instalments of notes and interest advanced to the insurance company by Emma W. Wildermuth, and thereafter the co-administrators and Carmack & Armstrong wholly failed to pay any of the instalment notes when the same became due, that Emma W. Wildermuth and plaintiff, to prevent the foreclosure, paid the instalments of the principal as they became due on the $14,000 mortgage, and the entire mortgage was paid to the the insurance company to prevent it from foreclosing; and that the co-administrators and Carmack & Armstrong wholly failed to make any payments on the claim and still refuse to make any payments to the insurance company as provided in the agreement.

C. R. Swickard, as executor, allowed the claim as a valid debt against Laura E. J. Hanna's estate and made certain payments thereon which were duly credited on the sum Emma W. Wildermuth had paid the insurance company, and the insurance company transferred any interest it had to Emma W. Wildermuth. It later became apparent that the Hanna estate would not be able to meet the payments to the insurance com-

pany required by the terms of the contract and the other defendants refused to pay according to their agreement. C. R. Swickard, administrator, allowed the payments as a valid claim against the Hanna estate and began to pay to Emma W. Wildermuth the sum due to her by the sale of real estate, thus reducing by $13,000 the sums Emma W. Wildermuth and plaintiff had been compelled to pay; leaving due her and plaintiff as her heir at law, the sum of $8,368.72, due him from the present administrators *de bonis non* with the will annexed of the estate of Laura E. J. Hanna and Carmack & Armstrong, for which demand has been repeatedly made and payment refused.

It is alleged that Emma W. Wildermuth died in February 1938, and her estate is now in process of administration, and by virtue of inheritance there is due to the plaintiff the sum of $8,368.72, for which written demand has been made upon Liggett, as administrator of the estate of Laura E. J. Hanna, by the sheriff of Franklin county; that Morton was duly appointed as co-administrator upon his application, of the estate of Laura E. J. Hanna, deceased, who joined with his co-administrator Liggett in a refusal to allow and pay this claim because the obligations of the Laura E. J. Hanna estate and of Carmack & Armstrong have been paid in full by the estate of Laura E. J. Hanna, deceased, which plaintiff denies, and he reaffirms that there is due him from the defendants Carmack & Armstrong and Liggett and Morton, as the acting co-administrators of the estate of Laura E. J. Hanna, jointly and severally the sum of $8,368.72 with interest. Plaintiff prays judgment jointly and severally against the defendants, Carmack & Armstrong as individuals and Willis H. Liggett and Morton as the duly appointed administrators of the Laura E. J. Hanna estate, in the sum of $8,368.72, with interest.

This is the petition to which the motion was filed and considered as a demurrer.

There are many briefs, some are complicated, from which it is not difficult to determine that the sole question before the court is whether the plaintiff filed his claim with the executors for the sum now claimed to be due, and the further question as to whether the claim was rejected or allowed by the administrators in compliance with the statute.

The plaintiff assigns errors substantially as follows: That the court erred in sustaining the motion to strike the third amended petition from the files; that it erred in rendering judgment in favor of the defendants (appellees), and in considering the motion when defendants' answer was and is still pending. As to the latter assignment, it would appear to us that when an amended petition is filed the answer to a prior petition need not be formally withdrawn as it is not an answer to the then pending petition.

There are two opinions by Leach, J., one delivered on the 11th of March, 1944, and the other on the 18th day of May, 1944, one being addressed to the second amended petition and one to the third amended petition.

In his opinion of May 18, 1944, considering the third amended petition, the court makes a careful analysis of the pertinent sections and concludes by quoting sections of the statutes which we omit except to designate the number of each.

The court says:

"By the terms of Section 10509-199, G. C., effective January 1, 1932, it was provided * * *."

And the section there quoted by him provides that a person interested may file a petition in the *Probate Court*.

"By Section 10509-206, the Common Pleas Court was given concurrent jurisdiction with the Probate

Court in such actions. Later, however, said sections were repealed, and Section 10506-86, General Code, now stands in place of the earlier Section 10509-199.''

Section 10506-86, General Code, as now effective, provides in substance that if a fiduciary refuses to make payment to any creditor whose claim has been allowed by the fiduciary and not subsequently rejected, or to make payment to any creditor or other interested person whose claim has been established, such creditor may file a petition against the fiduciary in the *Probate Court* from which the fiduciary received his appointment to enforce payment, briefly setting forth the nature of his claim.

''By Section 10506-90 it is provided that the Probate Court *may* send such proceeding to the Common Pleas Court. The comment following said section as published in Supplement to Page's Ohio General Code, is in effect as follows:

'' 'This section is similar to former Section 10509-205. While the Probate Court may refer the proceedings to the Court of Common Pleas, it should be noted that the Court of Common Pleas does not have original jurisdiction. This being a disciplinary proceeding, the committee was of the opinion that original jurisdiction should be confined to the *Probate Court,* and consequently there is no provision comparable to former G. C. Section 10509-206.' ''

The court comments that subsequently to the allegation of the allowance of the claim and payments thereon in the amount of $13,021.03, there is no allegation of demand and rejection, except that at the bottom of page 9 and top of page 10 of the amended petition:

''This is an allegation that 'written demand for the payment of the claim was made upon Willis H. Liggett, as co-administrator *de bonis non,* etc., * * * May 11, 1943, by the sheriff of Franklin county.' ''

The court points out the fact that "written demand" on Liggett by the sheriff on May 11, 1943, refers to service of summons on Liggett, and that the "refusal to allow and pay said claim" refers to the answer filed in this case by Liggett and his co-administrator on December 28, 1943.

The court comments that the sheriff had authority to serve the summons, but no authority to file a claim on behalf of any creditor, and further that the answer by the administrators denying liability and alleging that the debt had been paid is not the same thing in legal effect, as a rejection of a claim filed by a creditor, which is a condition precedent to a suit in the Common Pleas Court. The court concludes:

"It, therefore, appears from the petition that the claim was allowed and that there is not pleaded any subsequent rejection of the claim, in the sense of the statute," and that the refusal to pay, particularly where refusal to pay is based on claimed payment, is not a statutory rejection.

"Under the facts as pleaded in the third amended petition, this court does not, therefore, have original jurisdiction, but such jurisdiction is vested in the Probate Court by Section 10506-86, General Code." (Reference being to the Court of Common Pleas.)

Briefly, the trial court arrived at the conclusion that there is no allegation in the petition that the claim was properly presented to the administrators, and by them duly rejected. Suit was brought in the Common Pleas Court and such presentation and rejection were prerequisite to the right of the plaintiff to bring the action.

We have given careful consideration to the cases and statutes cited by each side. Those cases that seem most nearly like the case at bar are: *Heater* v. *Mittendorf* (Hamilton County Court of Appeals), 72 Ohio App., 4, 50 N. E. (2d), 559; *Neidecker* v. *Neidecker*, 63

Ohio App., 416, 26 N. E. (2d), 929; *Prudential Ins. Co.* v. *Realty Co.*, 143 Ohio St., 564, 56 N. E. (2d), 168.

The pertinent statutes, some of which were effective in 1932, and others effective in August 1941, are given in 119 Ohio Laws, commencing on page 394, wherein there are set forth those effective in 1932 but repealed by the General Assembly in 1941, and pertain to Sections 10509-112, 10509-113, 10509-114, 10509-132 and 10506-86.

We have read carefully the opinions of Leach, J., and find them sound in every respect.

The judgment of the court below is affirmed.

*Judgment affirmed.*

HORNBECK and MONTGOMERY, JJ., concur.

MONTGOMERY, J., of the Fifth Appellate District, sitting by designation in the Second Appellate District.